**FILED**
**FEBRUARY 20, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**08 C 1039**

**JUDGE NORGLE**
**MAGISTRATE JUDGE MASON**

# APPENDIX C

## WAGE RATES AND FRINGE BENEFITS AND PAYROLL DEDUCTIONS

The following wage rates and fringe benefit contributions per hour and payroll deductions shall be in effect as of June 1, 2001 through May 31, 2002.

### PAYROLL DEDUCTIONS

| | Wages | Welfare | Pension | Education* | Promotion | Legal Service | 401k or Savings Plan | Working Dues |
|---|---|---|---|---|---|---|---|---|
| Journeymen | $33.75 | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |
| Sub-Foremen | 35.00 | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |
| Foremen and Inspectors (supervising four or more men) | 35.75 | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |
| Superintendents or District Foremen (supervising 19 or more men) | 36.75 | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |
| General Superintendents or xx District Superintendents** | | 4.25 | 2.84 | .44 | .34 | .39 | 1.50 | .25 |

**at least 6% above Superintendent's wage rate per hour

| Apprentices | Wages | Welfare | Pension | Education* | Promotion | Legal Service | 401k or Savings Plan | Working Dues |
|---|---|---|---|---|---|---|---|---|
| (1st six months) | 11.50 | 4.25 | 2.84 | .44 | .34 | .39 | N/A | N/A |
| (2nd six months) | 12.50 | 4.25 | 2.84 | .44 | .34 | .39 | N/A | .20 |
| 2nd Year | 14.85 | 4.25 | 2.84 | .44 | .34 | .39 | N/A | .20 |
| 3rd Year | 16.90 | 4.25 | 2.84 | .44 | .34 | .39 | N/A | .20 |
| 4th Year | 22.30 | 4.25 | 2.84 | .44 | .34 | .39 | 1.00 | .20 |
| 5th Year | 25.30 | 4.25 | 2.84 | .44 | .34 | .39 | 1.00 | .20 |

*Includes $0.05 per hour Direct Contribution to the U.A. Training Fund

Wage increases of $1.65 per hour effective June 1, 2002 and $1.70 per hour effective June 1, 2003 have been negotiated under the terms of this Agreement for Journeymen Plumbers. Apprentice wage increases effective June 1, 2002 and June 1, 2003 will be determined on the same percentage as the Journeymen rate. These increases for journeymen and apprentices are to be allocated in a manner to be determined by Chicago Journeymen Plumbers' Local Union 130, U.A. in its sole and exclusive discretion. Local 130 will timely notify each signatory Employer of its determination concerning the allocation.

46

# IMPORTANT INFORMATION

## PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN) AND SAVINGS PLAN

### PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN):

The Employer shall deduct from the wages (before taxes) of each journeyman plumber enrolled in the 401(k) Plan one dollar and fifty cents ($1.50) per each hour worked for the Plumbers' Retirement Savings Fund (401(k) Plan). The Employer shall deduct from the wages (before taxes) of each Fourth and Fifth year Apprentice enrolled in the 401(k) Plan one dollar ($1.00) per each hour worked for the Plumbers Retirement Savings Fund (401(k) Plan).

### REGULAR SAVINGS PLAN:

The Employer shall deduct from the wages (after taxes) of each journeyman plumber not enrolled in the 401(k) plan one dollar and fifty cents ($1.50) per each hour worked for the Savings Plan. The Employer shall deduct from the wages (after taxes) of each Fourth year and Fifth year Apprentice not enrolled in the 401(k) plan one dollar ($1.00) per each hour worked for the Savings plan. First, Second and Third year Apprentices are not included in this Plan.

### WORKING DUES:

The Employer shall deduct (after taxes) twenty-five cents ($0.25) per hour for each hour worked for each Journeyman, Foreman, Superintendent and General Superintendent, and twenty cents ($0.20) per each hour worked for each Apprentice, with the exception of first year-first six months Apprentices for Working Dues.

### *IMPORTANT NOTE*

### PLUMBERS' RETIREMENT SAVINGS FUND (401(k) PLAN)

A participant in cooperation with his/her Employer, can direct more than the base contributions rate of $1.50 per hour, in increments of ($0.50) fifty cents, but not more than $4.50 per hour to the 401(k) Plan.

A contractor is not bound under the terms of our Agreement to deduct more than the base contribution rate of $1.50 per hour.

### PLUMBERS' SAVINGS PLAN

An employee, in cooperation with his/her Employer, has the following options:
1) An employee not participating in the 401(k) Plan can allocate more than $1.50 per hour, in increments of fifty cents ($0.50), to the Plumbers' Savings Plan.
2) An employee in the 401(k) Plan can allocate at least $1.50 per hour or more, in fifty cents ($0.50) increments, to the Plumbers' Savings Plan, in addition to amounts contributed to the employee's 401(k) Plan.

An Employer is not bound under the terms of our Agreement to comply with options 1 or 2.

47

Exhibit A, Page 25 of 85

# APPENDIX D
## ALCOHOL AND DRUG PROGRAM

The ALCOHOL AND DRUG PROGRAM appendix was made and entered into as of the 1st day of June, 1992, by and between CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, U.A. (hereinafter referred to as the "Union"), and the PLUMBING CONTRACTORS ASSOCIATION OF CHICAGO AND COOK COUNTY on behalf of itself and its member contractors (hereinafter, for convenience, collectively referred to as the "Employer" or "Employers") for the purpose of supplementing the parties' current collective bargaining agreement having a term of June 1, 1995 thorough May 31, 1998 (hereinafter referred to as the "Agreement") and all successor contracts for their entire terms as well.

WITNESSETH:

WHEREAS, the Employer has agreed, pursuant to Article IV of the Agreement, to make all reasonable provisions for the safety and health of its employees during the hours of their employment, and

WHEREAS, the Union has agreed, pursuant to Article IV of the Agreement, to promote in every way possible the realization of the responsibility of the individual employee with regard to preventing accidents to himself and to his fellow employees during the hours of their employment; and

WHEREAS, the Employer and Union believe that alcohol and drug use by employees covered under the parties' Agreement endanger the safety and health of such employees, their co-workers, other trades people and the public generally; and

WHEREAS, in order to fulfill their respective agreements under said Article IV, the Employer and Union are committed to the principle of an alcohol and drug free work place and to the establishment of fair, appropriate, practical and effective rules and procedures for maintaining same; and

WHEREAS, after investigation, analysis and negotiation, the Employer and Union have reached agreement as to such rules and procedures.

NOW, THEREFORE, the Employer and the Union hereby agree as follows:

## I. PURPOSE AND SCOPE OF APPENDIX

A. The purposes of this Appendix are to establish rules and procedures governing (1) the testing of applicants for drug use as a condition of their initial employment with any Employer under the Agreement; (2) the testing of employees covered by the Agreement where there is reasonable suspicion to believe that such employees are using or are impaired by alcohol or drugs during working hours or on the premises of an Employer; and (3) the discipline of such employees who possess, dispense, receive, use or are impaired by alcohol or drugs during working hours or on such premises.

B. An Employer shall have no right to impose on any applicant or employee any testing, disciplinary actions or other measures relating to alcohol or drugs, except in accordance with this Appendix.

C. The sole exception to the foregoing shall be the temporary, limited right of an Employer to adopt an alcohol and drug program required by a customer as a condition to securing and satisfying a given contract. This right shall be limited to the life of the applicable contract or project. In each such case, the Employer shall promptly advise the Union of the requirement that it adopt such a program, and shall provide the Union and the employees assigned to the project with a copy of the program.

D. The Employer and the Union shall cooperate to ensure that a copy of this Appendix is promptly provided to all Employers bound by the Agreement and that all employees and applicants are informed of the provisions hereof.

## II. INTERPRETATION OF APPENDIX, AND RESOLUTION OF DISPUTES CONCERNING EMPLOYEES

A. The Employer and the Union acknowledge that questions, disagreements and disputes may arise from time to time concerning interpretation of this Appendix and compliance by the parties with the provisions hereof as concerns employees. In all such cases, representatives of the Employer and the Union shall meet and confer within ten (10) working days following written notice by one party to the other of the existence of any such question, disagreement or dispute.

B. If the Employer and the Union are unable to resolve such question, disagreement or dispute pursuant to such conference, the Employer or the Union may submit the matter to the Joint Arbitration Board (JAB) for disposition in accordance with Sections 3.4, 3.5, and 3.6 of Article III of the Agreement. The decision of the JAB shall be final and binding upon the Employer, the Union and the employee.

C. The provisions of this Clause II of this Appendix shall not be available to applicants rejected for initial employment under the provision of Clause VII hereof. However, it shall be a violation of this Appendix for any Employer to put any applicant to work in a bargaining unit position under the Agreement unless such applicant has taken the drug test and tested negative as provided for under Clause VII hereof. The Union or any other Employer may complain of such violation to the JAB pursuant to Section 3.4 of the Agreement. The JAB shall hear and resolve the complaint pursuant to Sections 3.4, 3.5, and 3.6 of the Agreement. The decision of the JAB shall be final and binding on the Union and all Employers who are parties to the dispute. The JAB shall have the authority in such disputes, without limitation, to order that an Employer found guilty of violating this Paragraph C to withdraw any conditional offer of employment made to the applicant, discharge the applicant, cease and desist from employing the applicant under the Agreement, to fine the Employer and/or to enter such other order as it deems appropriate.

## III. DEFINITIONS

As used in this Appendix, the following terms shall have the meanings stated:

A. "Applicant" - an individual who has applied for or who is seeking initial employment in any bargaining unit position with any Employer bound by the Agreement. "Applicant" does not include an individual who has held such initial employment with an Employer under the Agreement or under a prior collective bargaining agreement between an Employer and the Union but who thereafter applies for or seeks a bargaining unit position with the same or another Employer under the Agreement.

B. "Employee" - An individual who is employed by an Employer in a bargaining unit position under the Agreement or who previously has been employed in such position by an Employer under the Agreement or under a prior collective bargaining agreement between an Employer and the Union.

C. "Employer's premises" - The Employer's offices, shops, parking lots and other facilities and grounds, the Employer's vehicles and equipment, and other work sites, buildings, facilities and grounds entered upon by the employee in connection with his job duties.

D. "Alcohol" - Any liquid or solid which contains any amount or percentage of any alcohol, as chemically defined, with the exception of commercial products used in the plumbing trade.

E. "Drugs" - Any substance within the general classes of drugs commonly described as amphetamines, barbiturates, benzidiazepines, cocaine, marijuana/hashish, methadone, methaqualone, opiates, phencyclidine (PCP), and propoxyphene.

F. "Reasonable Suspicion" - A belief based upon observations which reasonably lead the Employer or its agent to suspect that an employee is in possession of, dispensing, receiving, using or impaired by alcohol or drugs during working hours or while on the Employer's premises.

## IV. PROHIBITED EMPLOYEE CONDUCT AND DISCIPLINE

A. In order to protect the safety and health of all employees, their coworkers, other tradesmen and the general public, EMPLOYEES SHALL NOT POSSESS, DISPENSE, RECEIVE, USE OR BE IMPAIRED BY ALCOHOL OR DRUGS AT ANY TIME DURING WORKING HOURS OR WHILE ON THE Employer'S PREMISES.

B. The conduct described below shall constitute a violation of the foregoing policy. Any violation of these rules by an employee shall be grounds for immediate discharge:

(1) Possession, dispensing or receiving alcohol or drugs during working hours or while on the Employer's premises;

(2) Using or being impaired by alcohol or drugs during working hours or while on the Employer's premises;

(3) Refusing to cooperate fully in an inspection conducted by an Employer of its property to determine the presence of alcohol or drugs;

(4) Refusing, for a second time, to submit to reasonable suspicion testing requested by the same Employer, including a refusal to sign required consent and chain of custody forms; and

(5) Refusing to submit to testing requested by an Employer or testing positive for alcohol or drugs at any time within one (1) year after

50

51

subject to the right of a representative of the Employer, the Union and the collection facility to remain immediately outside the stall or other area where the specimen is given, to the extent permitted by the collection facility.

F. The Employer shall pay the employee for the time required to give the specimen, including travel to and from the collection facility, and shall bear all costs relating to any testing which it requests.

G. All testing conducted pursuant to this Appendix shall be performed by laboratories certified by the U.S. Department of Health and Human Services (HHS) to perform urinalysis testing for federal agencies. Additionally, all collection facilities and laboratories selected for such testing shall comply with all applicable HHS or National Institute on Drug Abuse (NIDA) guidelines and protocols, except as superseded by this Appendix.

H. The suspected presence of alcohol and drugs shall initially be tested by the EMIT methodology. Presumptive positive results for drugs shall be confirmed by the GC/MS methodology. Presumptive positive results for alcohol shall be confirmed by the GC methodology. Laboratory test results shall be deemed positive if they meet or exceed the cut-off levels established by NIDA or by the laboratory in accordance with industry standards. Laboratory test results shall be reviewed by a medical review officer (MRO) recommended by the medical care provider associated with the laboratory. The MRO shall issue a test report. If the MRO concludes that a test result is negative because the MRO has determined that there is a legitimate medical explanation for an apparent positive laboratory test and that the reason for that laboratory test result is consistent with legal drug use, the MRO shall report the test result as being negative for such reason but shall not identify the drug(s) which were confirmed as positive by the laboratory tests or otherwise comment on the results of such tests. A negative MRO report shall be deemed a negative test result for all purposes under this Appendix.

I. The Employer shall be responsible for selecting and making its own arrangements with one or more medical care providers with respect to collection facilities and procedures, laboratories, testing methodologies and MRO reports in accordance with the requirements of this Clause VI, and shall bear all costs relating thereto.

J. All MRO reports relating to testing requested by the Employer shall be submitted to the Employer. Within one (1) business day of the Employer's receipt thereof, the Employer shall transmit a copy of same to the Union if the employee has authorized such disclosure in writing.

53

---

enrollment in a legitimate, supervised alcohol or drug rehabilitation program.

## V. PRESCRIBED MEDICATION

A. Any employee who is using a prescribed or "over the counter" medication should so advise his Employer, where the employee has been informed by his physician or pharmacist that the medication may have impairing effects.

B. Where so advised, an Employer shall determine whether the employee's continuation of his existing job duties would present an undue risk of injury to the employee, his co-workers or others at the work site. Where it is determined that such a risk would be presented, the Employer may reassign the employee to an appropriate other work site or task.

## VI. TESTING OF EMPLOYEES

A.† Where an Employer has a reasonable suspicion that an employee is using or is impaired by alcohol or drugs during working hours or while on the Employer's premises, the Employer shall have the right to request that the employee submit to urinalysis testing for alcohol and drugs.

B. Wherever reasonably possible, the Employer's observation shall be summarized in writing and signed by each of the observants.

C. An employee shall have the right, once during his employment by the same Employer, to refuse his Employer's request that he submit to such testing. In such event, the employee shall be suspended, without pay, for the balance of that workday as well as the next, and such discipline shall not be grievable.

D. Whenever an employee is to be tested, the employee shall be provided with transportation to and from the collection facility. The Employer shall advise the Union of the name and address of the collection facility to which the employee will be sent and the approximate time that the employee will be reporting there. The Union shall dispatch an Officer, Business Representative or other agent, if available, to the collection facility. No specimen shall be collected from the employee without such Union agent being present unless any such agent is unavailable or is unreasonably detained.

E. The employee shall be permitted to give the specimen in private,

52

K. An employee who submits to testing at the request of this Employer may be temporarily suspended pending the Employer's receipt of the applicable MRO report, where the Employer reasonably believes that the employee's presence on the job during such period would pose a risk to the safety or health of the employee, his co-workers, other tradesmen or the public generally. If the MRO report is negative for both alcohol and drugs, the Employer shall immediately reinstate the employee and pay him back pay for all hours lost due to such suspension.

L. An MRO report which is positive for either alcohol or drugs shall constitute a rebuttable presumption of the employee's impairment during working hours or while on the Employer's premises under this Addendum. In order to overcome said presumption in any proceeding brought by the Union pursuant to this Appendix, the Union and the employee shall have the burden of persuading the JAB by clear and convincing evidence that the MRO report is erroneous.

## VII TESTING OF APPLICANTS

A. It is a condition of initial employment that all applicants take and pass a pre-employment urinalysis drug test. Such testing shall conform with the procedures and standards specified in Clause VI, Paragraphs G and H.

B. Applicants for plumber apprentice positions who are to be referred for employment to an Employer by Joint Apprenticeship Committee (JAC) shall be sent for such testing by the JAC. All other applicants shall be referred by the Employer to the Union which shall send such applicants for such testing. The costs related to such testing shall be borne by the applicant.

C. The applicant shall fill in and sign such consent and chain of custody forms required by the health care provider as well as such consent and authorization forms required by the Employer and Union or JAC in the case of applicants who are to be referred by the JAC for employment in apprentice plumber positions, and the prospective Employer of the applicant. The applicant shall report to the designated collection facility within forty-eight (48) hours after being directed to do so by the Union or the JAC in the case of such applicants for plumber apprentice positions. Failure of the applicant to so report for testing shall constitute a failure to take such test and disqualify the applicant from employment. Neither the consent forms required by the medical care provider nor any information filled in by an applicant or conveyed by an applicant to the medical care provider concerning any medical condition the applicant may have or any lawful drugs the applicant may be taking therefore shall be disclosed to the Union, the JAC or the prospective Employer except as permitted under the circumstances set forth in Clause VIII of this Appendix. The applicant shall be provided with a copy of the MRO report. The MRO report shall be maintained in confidential files by the Union or the JAC and the prospective Employer as required by applicable law and shall be maintained as a confidential document as required by law and by Clause VIII hereof except to the extent that disclosure thereof is required by law or permitted under the circumstances set forth in Clause VIII.

D. Applicants who test negative for drugs, as defined in Clause VI, Paragraph H, shall be eligible for initial employment. Applicants who test positive for drugs in accordance with such Clause and Paragraph shall be ineligible for such employment, and any conditional offer of such employment made to such applicant shall be withdrawn.

## VIII. CONFIDENTIALITY

The Employer and the Union, and the JAC in the case of applicants for apprentice plumber positions, shall keep confidential and shall not disclose any documents relating to employee testing or rehabilitation programs, or information contained therein, except as required by law or in connection with any grievance, claim or cause of action brought by or against the Employer, the Union, the JAC, the applicant or the employee or any other person or entity arising from or in any way relating to the subject matters covered by this Appendix. The filing of any such grievance, claim or cause of action shall constitute a waiver by the applicant or employee of the confidentiality of any and all such documents and the release of the Employer, Union, the JAC and any other person or entity from any confidentiality obligations with respect to any and all such documents.

## IX. CONTINUING APPLICABILITY OF AREA AGREEMENT

This Addendum is specifically incorporated in and made part of the Agreement as though set forth in full therein. Each and all of the provisions of the Agreement shall continue in full force and effect for the duration of said agreement, except where specifically superseded by the express terms of this Appendix.

54

55

# AGREEMENT

between

# PLUMBING CONTRACTORS ASSOCIATION

## OF

## CHICAGO and COOK COUNTY



and

# CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130, U.A.



June 1, 2004 through May 31, 2007

EXHIBIT No._____

PAGE ____ OF ____

# TABLE OF CONTENTS

| | Page |
|---|---|
| ARTICLE I - RECOGNITION | 7 |
| SECTION 1.1. Parties to the Agreement | 7 |
| SECTION 1.2. Recognition Clause | 7 |
| SECTION 1.3. Union Shop | 8 |
| SECTION 1.4. Subcontracting | 8 |
| SECTION 1.5. Moonlighting | 8 |
| SECTION 1.6. Access to Premises | 9 |
| SECTION 1.7. Exclusivity | 9 |
| ARTICLE II - STRIKES AND LOCKOUTS | 9 |
| SECTION 2.1. Lockouts | 9 |
| SECTION 2.2. Employee Job Action | 9 |
| ARTICLE III - DISPUTE RESOLUTION | 10 |
| SECTION 3.1. Grievance Arbitration | 10 |
| SECTION 3.2. Joint Arbitration Board | 10 |
| SECTION 3.3. Audits | 11 |
| SECTION 3.4. Other Contract Violations | 12 |
| SECTION 3.5. Hearing | 12 |
| SECTION 3.6. Powers of the Joint Arbitration Board | 13 |
| SECTION 3.7. Indemnification of the Joint Arbitration Board | 13 |
| ARTICLE IV - WORKING CONDITIONS | 14 |
| SECTION 4.1. General Policy | 14 |
| SECTION 4.2. Reporting Accidents | 14 |
| SECTION 4.3. Employer Insurance | 15 |
| SECTION 4.4. Unsafe Working Conditions | 15 |
| SECTION 4.5. Plumbing Codes | 15 |
| SECTION 4.6. Older Workers | 15 |

# TABLE OF CONTENTS

| | Page |
|---|---|
| SECTION 4.7. Non-Discrimination Policy | 15 |
| SECTION 4.8. Staffing | 16 |
| SECTION 4.9. Pipe Cutting | 17 |
| SECTION 4.10. Specifications | 17 |
| SECTION 4.11. Plumbing Supervision | 18 |
| SECTION 4.12. Rule Violators | 18 |
| SECTION 4.13. OSHA and HAZCOM Training | 18 |
| SECTION 4.14. OSHA and HAZCOM Violations | 19 |
| SECTION 4.15. Automobile Not Required | 19 |
| SECTION 4.16. Work Connected Expenses | 19 |
| SECTION 4.17. Travel Expenses | 19 |
| SECTION 4.18. Tool Provision | 19 |
| SECTION 4.19. Clothing Provision | 20 |
| ARTICLE V - HOURS AND OVERTIME | 20 |
| SECTION 5.1. Work Day and Work Week | 20 |
| SECTION 5.2. Overtime | 22 |
| SECTION 5.3. Show Up Pay | 22 |
| SECTION 5.4. Holidays | 22 |
| SECTION 5.5. Shift Work | 23 |
| ARTICLE VI - WAGES | 23 |
| SECTION 6.1. Wage Rates and Fringe Benefits | 23 |
| SECTION 6.2. Foreman's Wage | 24 |
| SECTION 6.3. Apprentice's Wage | 24 |
| SECTION 6.4. Pay Day | 24 |
| SECTION 6.5. Wage Payment | 24 |
| SECTION 6.6. Union Dues Deduction | 25 |
| SECTION 6.7. Pay at Separation | 25 |
| SECTION 6.8. Bond Requirement | 25 |

3

EXHIBIT No._____
PAGE ___ OF ___
Exhibit A, Page 32 of 85

# TABLE OF CONTENTS

| | Page |
|---|---|
| SECTION 6.9. Prevailing Wage Payment | 27 |
| SECTION 6.10. Retirement Savings Fund | 27 |
| ARTICLE VII - FOREMEN | 28 |
| SECTION 7.1. Foreman's Duties | 28 |
| SECTION 7.2. Foreman's Schedule | 29 |
| ARTICLE VIII - APPRENTICES | 29 |
| ARTICLE IX - FRINGE BENEFITS | 30 |
| SECTION 9.1. Savings Plan | 30 |
| SECTION 9.2. Health & Welfare and Pension Plan | 30 |
| SECTION 9.3. Apprentice Trust Fund | 31 |
| SECTION 9.4. Plumbing Council of Chicagoland | 32 |
| SECTION 9.5. Group Legal Services Plan Fund | 33 |
| SECTION 9.6. Industry Advancement Fund | 34 |
| SECTION 9.7. Non-Deduction from Wages | 34 |
| SECTION 9.8. Contribution and Deduction Due Dates | 34 |
| SECTION 9.9. Employer Recording | 36 |

EXHIBIT NO. _____

PAGE ____ OF ____

## TABLE OF CONTENTS

| | Page |
|---|---|
| ARTICLE X - HIRING | 36 |
| ARTICLE XI - ON THE JOB INJURIES | 37 |
| ARTICLE XII - INDUSTRY COMMITTEE | 38 |
| ARTICLE XIII - JURISDICTIONAL DISPUTES | 38 |
| ARTICLE XIV - SUCCESSORS AND ASSIGNS | 39 |
| SECTION 14.1. Employer Entities Bound | 39 |
| SECTION 14.2. Successors and Assigns | 39 |
| ARTICLE XV - ANNUAL REOPENERS | 39 |
| ARTICLE XVI - MISCELLANEOUS | 39 |
| SECTION 16.1. Separable Provisions | 39 |
| SECTION 16.2. Duration of Agreement | 40 |
| ARTICLE XVII - SERVICE & MAINTENANCE AGREEMENT | 40 |
| APPENDIX A - OCCUPATIONAL JURISDICTION | 44 |
| APPENDIX B - FLEXIBLE WORK DAY AND WORK WEEK | 45 |
| APPENDIX C - WAGE RATES AND FRINGE BENEFITS AND PAYROLL DEDUCTIONS | 47 |
| APPENDIX D - ALCOHOL AND DRUG PROGRAM | 49 |

** As used herein references to the masculine gender shall also refer to the feminine. **

# ARTICLE I
## RECOGNITION

**SECTION 1.1. Parties to the Agreement.** This Agreement is made and entered into as of June 1, 2004 between the Plumbing Contractors Association of Chicago and Cook County, solely for and on behalf of each of its individual members, who are duly licensed by law and bonded to engage in the plumbing business, are established in that business, intend to employ not less than two (2) journeymen or one (1) journeyman and one (1) apprentice, and hereafter are collectively referred to as "Employer" or "Employers," and Chicago Journeymen Plumbers' Local Union 130, U.A., which is composed of competent licensed journeymen and apprentices who are duly authorized by law to install and inspect all plumbing work, and which hereinafter is referred to as "Union."

**SECTION 1.2. Recognition Clause.** The Employers recognize the Union as the exclusive collective bargaining agent for all of their employees who perform any of the work applicable within the Fifty-One (51) Articles of Jurisdiction of the United Association as set forth in "Appendix A" to this Agreement for which the Union has been chartered by the United Association within the City of Chicago, Illinois, Cook County, Illinois and vicinity, Will County, Illinois outside the city limits of Joliet, Illinois, as delineated by the United Association in 1972, that part of DuPage County, Illinois known as the Argonne National Laboratories, fifty percent (50%) of the employees employed by the Employers who (whose shop is located in the geographic jurisdiction of Local Union 130) are parties to this Agreement when performing said work in Lake County, Illinois, and wherever else the Union has territorial jurisdiction. The Union recognizes the Plumbing Contractors Association of Chicago and Cook County as the exclusive bargaining agent of its individual member Employers with respect to their employees.

Employees covered by this Agreement shall place in position and connect all materials, appurtenances, devices, fixtures and equipment used in the construction of plumbing as well as handle, unload and distribute all of the above mentioned upon and after its arrival on the job site or premises. When fixtures or equipment are protected by covering during construction, such covering shall be put on and removed and fixtures cleaned by employees covered by this Agreement.

Employees covered by this Agreement shall do all the laying out, cutting and drilling of all holes, chases and channels, the setting and erection of bolts, inserts, stands, supports, sleeves, thimbles, hangers, conduits and boxes used in connection with work falling under the jurisdiction of the Union.

6

7

It is understood and agreed that the foregoing Paragraphs of this Section shall not be construed as limiting the scope of bargaining unit work and that employees covered by this Agreement shall perform all work covered by the Fifty-One (51) Articles of Jurisdiction of the United Association, included in Appendix A which comes within the work jurisdiction for which the Union has been chartered by the United Association.

SECTION 1.3. Union Shop. All journeymen and apprentices who are now in the employ of the Employers covered by this Agreement, and all journeymen and apprentices who are hereafter employed by Employers covered by this Agreement, shall, as a condition of employment, become members of the Union on the earliest date provided by applicable federal law after their employment, or the effective date of this agreement, whichever is later, and shall, as a condition of employment, remain members of the Union during the term of this Agreement.

SECTION 1.4. Subcontracting. No journeyman shall be permitted to subcontract or accept a lump sum payment (lump) for the installation of any work under the jurisdiction of the Union. Parties violating this Section shall be penalized by their respective organizations through the Joint Arbitration Board. The Employers agree not to sublet, lump or contract for labor any work which comes under the jurisdiction of the Union with any member of the Union. Such subletting, lumping or contracting shall be considered a violation of this Agreement and summarily dealt with, in accordance with the grievance procedures of this Agreement. Nothing herein prohibits subcontracting work to MBE, WBE, and DBE as long as those entities are signatory to an Agreement with the Union.

The Employer agrees that in the event the Employer subcontracts any work coming under the provisions of this Agreement to any other person or firm, the Employer shall subcontract the same only to another Employer who is a party to this Agreement. A refusal of employees to render services upon a job site where this subsection is violated, shall not be a violation of this Agreement for any purpose, nor shall such refusal be cause for discharge.

SECTION 1.5. Moonlighting. No employee shall be permitted to work for himself or work after hours or on Saturday, Sunday or Holidays as a self-employed Employer or work for another Employer as a subcontractor. First time violators may be summoned before the Union Executive Board in accordance with the procedures of the United Association Constitution. However, a trial shall be set for repeat offenders. Discharge from employment for repeat offenders will not be construed as a violation of this Agreement.

8

SECTION 1.6. Access to Premises. Duly authorized representatives of the Union or of the Joint Arbitration Board shall, for cause, be allowed to visit any job and/or any Employer's place of business during working hours to inspect, view the Employer or the Employer's duly authorized representative, or the Employer, in his employ, to determine compliance with the Agreement. Further, it is agreed that job site visits by a union representative are without restrictions but that visits to the shop shall be by appointment if that is the Employer's policy.

Duly authorized representatives of the Fringe Benefit Funds shall be extended the same right, as described above, in order to inspect or audit all books and records of the Employer which pertain or relate to the Employer's compliance with this Agreement. Such records which shall be available inspection or audit include but are not limited to payroll and time records, the books, payroll and income tax returns, blueprints, contracts, invoices, permits, and documents related to worker's compensation, public liability and unemployment insurance coverage. It is understood and agreed that such visit, inspection or audit shall in no way hinder the progress of the work being performed. Should the Employer refuse to permit such inspection or audit as authorized by this Article, the Employer shall be liable for all costs and legal fees incurred by the Union, the Fringe Benefit Funds or the Joint Arbitration Board in obtaining a court order requiring the Employer to permit such inspection or audit. Such liability shall be in addition to and not in lieu of any relief or remedies available in such proceeding to the Union, the Trustees of the Fringe Benefit Funds or the Joint Arbitration Board under any Illinois or federal law.

SECTION 1.7. Exclusivity. Any agreement entered into between the parties hereto with any other Employer association, Employer or labor organization engaged in the Plumbing Industry shall be brought to the attention of the other party and no Agreement which will in any way conflict with the provisions of this Agreement will be made by either party to this Agreement.

ARTICLE II
STRIKES AND LOCKOUTS

SECTION 2.1. Lockouts. The Employer agrees that there shall be no lockout of employees during the term of this Agreement.

SECTION 2.2. Employee Job Action. The Union agrees that there shall be no abandonment of work over any matter which is subject to arbitration, provided, however, that the Union may withdraw its members from the employ of, picket and/or use other lawful economic means against any Employer by reason

9

Exhibit A, Page 36 of 85

son of the Employer's non-payment of wages, deductions or contributions or the Employer's failure to obtain, maintain in full force and effect and keep on file with the Union the requisite bond or letter of credit and workers' compensation insurance as more fully provided under this Agreement, notwithstanding that disputes over such matters are subject to arbitration hereunder.

## ARTICLE III
## DISPUTE RESOLUTION

**SECTION 3.1. Grievance Arbitration.** Disagreements or disputes arising under or which involve interpretations of this Agreement, shall be processed and settled by arbitration in the manner set forth in this Article.

**SECTION 3.2. Joint Arbitration Board.** The parties hereto agree that all arbitrable disputes arising between them shall be submitted to a Joint Arbitration Board. The Joint Arbitration Board shall be comprised of ten (10) members, consisting of five (5) members appointed by the Plumbing Contractors Association of Chicago and Cook County and five (5) members appointed by the Union.

The duties of the Joint Arbitration Board shall be to decide on all cases as presented and in conformity with the sections contained in this Agreement. In the event of deadlock by the Board, whereby a decision cannot be rendered, the case will be assigned to an arbitrator mutually agreeable to the Board members. In the event the Board members are unable to agree on an arbitrator, the Board shall give written notice of such inability to agree to the parties to the arbitration. Thereafter, the parties shall request the American Arbitration Association to submit a list of seven (7) arbitrators. The parties shall alternate in striking names from the list until one name remains, with the first strike to be made by the party initiating the arbitration. The person whose name remains shall be the arbitrator. The arbitrator shall have no authority to vary or ignore the provisions of this Agreement. The arbitrator's decision shall be final and binding on the parties to the arbitration. The expenses of the arbitrator shall be divided equally between the parties to the arbitration, except that no employee shall be required to pay any such expense.

The Joint Arbitration Board shall meet no less than twelve (12) times during the calendar year, or as needed, for the purpose of considering current and new business. The reasonable and necessary expenses and costs incurred by the Joint Arbitration Board in performing its functions under this Agreement, as authorized by the Union, The Fringe Benefit Funds and Plumbing Council of Chicagoland who are entitled to payments or contributions under this Agreement, shall be paid by them in proportion to their interests out of the sums collected as liquidated damages pursuant to Article IX, Section 9.8 hereof, to the extent that such sums are available; otherwise such expenses and costs shall be borne and paid for by the parties thereto.

Within a period of thirty (30) days time after the execution of this Agreement, the Joint Arbitration Board shall meet, organize, elect a Chairman, Secretary and Treasurer, and transact any business that may properly come before the Joint Arbitration Board.

**SECTION 3.3. Audits.** In the event that an audit by the accountants for the Union and/or the Fringe Benefit Funds to which the Employer is required to make contributions under this Agreement discloses an alleged underpayment of wages, deductions or contributions required by this Agreement, the Employer shall have ten (10) days after notification by the accountants of such alleged underpayment to pay such delinquencies and any interest and/or liquidated damages due with respect thereto in accordance with Article IX, Section 9.8 hereof, or if the Employer disagrees with the audit or any part thereof, to arrange to meet with the accountants within said ten (10) day period to discuss the area(s) of disagreement and present all records in support of his position(s). If the Employer fails to make the payments shown on the audit, fails to meet with the accountants and produce said records or if the disagreement(s) is not resolved, the matter will be referred by the accountants to the attorneys for the Union and/or the Funds. The attorneys shall attempt to resolve the matter by requesting in writing that the Employer meet with them within ten (10) days. If the Employer fails within ten (10) days of such request to pay such delinquencies and interest and/or damages due in accordance with Article IX, Section 9.8 of this Agreement, to arrange such meeting or fails to appear at such meeting and produce all records and any other evidence, including witnesses, in support of its position(s) at such meeting, or if the matter is not resolved at such meeting, the attorneys will notify the Secretary of the Joint Arbitration Board of the existence of a dispute under this Agreement. No records or other evidence, including witnesses, which the Employer has not produced for the accountants or the attorneys will be considered by the Joint Arbitration Board at any hearing before it with regard to such dispute, nor will the Board's proceedings be delayed by the Employer's production of such other or additional records or evidence.

Action will be brought before the Joint Arbitration Board when any audit reveals that a licensed journeyman plumber and/or apprentice or any other party who performs jurisdictional work has not been paid the prevailing rate.

The Fringe Benefit Fund trustees will review uncontested audits for underpayment of wages, and inform the Joint Arbitration Board of each violation.

10

11

EXHIBIT No. _____
PAGE ____ OF ____

Exhibit A, Page 37 of 85

**SECTION 3.4. Other Contract Violations.** In the event of an alleged contract violation other than one which is subject to Section 3.3 of this Article, immediately above, a Business Representative or other representative designated by the Union will notify the Employer of such alleged violation and attempt to resolve the matter informally. If the matter is not resolved or if the Employer refuses to meet in a reasonable and timely fashion with the Union's Representative to resolve the matter, said representative shall notify the Secretary of the Joint Arbitration Board in writing of the existence of a dispute.

It shall be considered a violation of this Agreement for any plumbing contractor to intentionally omit backing supports for plumbing fixtures and accessories from a bid package. Further, any plumbing foreman or superintendent who wilfully refrains from directing journeymen or apprentices under his/her charge to install all backing and accessories related to a plumbing system shall be found in violation of this Agreement. Both the Employer and the employee may be summoned before the Joint Arbitration Board for appropriate action.

If a plumbing contractor submits a bid in accordance with the above, and it is not accepted, there will be no action taken against the contractor or his employee by the Union.

**SECTION 3.5. Hearing.** After receipt of a notice of dispute under Section 3.3 or 3.4, above, of this Article, the Secretary of the Joint Arbitration Board shall send the Employer written notice of the date, time and place of a hearing before the Board with respect to the dispute, together with a copy of the written notice of the dispute. The Board members present at the hearing shall hear the evidence in the case and shall render a decision which it will issue in writing over the signature of the Secretary of the Board. Said decision shall be final and binding on the parties to this Agreement. The Secretary of the Board will make or direct the making of the official minutes or transcription of the hearing. No other recording of the hearing is permitted. The Employer must appear at the hearing. Appearance through an outside representative only does not constitute the Employer's appearance. If the Employer is unable to so appear at the date, time and place set forth in the notification of hearing, he shall promptly notify the Board's Secretary in writing of the reasons therefore and request a postponement. Such request for postponement must be received by the Secretary no later than 5:00 p.m. of the fourth (4) business day before the time scheduled for the hearing. A request for a postponement will be granted only for good and sufficient reasons. No Employer will be granted more than one (1) postponement in the same case. If the Employer fails to appear at a scheduled hearing or at a hearing postponed to a later date at his request or if an Employer's request for postponement is not received by the Board's Secretary in the timely manner as set forth

12

hereinabove or is denied, the Board members shall hear the case at the appointed time notwithstanding the Employer's failure to appear and shall decide the case upon the evidence before it in the same manner as set forth hereinabove, which decision shall be final and binding on the parties to this Agreement.

**SECTION 3.6. Powers of the Joint Arbitration Board.** The Joint Arbitration Board shall have full power to enforce this Agreement against offending employees and/or Employers by appropriate penalties or remedies including, without limitation, fines, replacement of defective work without pay, or other appropriate sanctions. The Joint Arbitration Board shall have full power to summon Employers, the Union and employees covered by this Agreement against whom charges of violations have been preferred and to summon Employers and employees covered by this Agreement to testify in any manner before the Joint Arbitration Board. Such summons shall be served by register or certified mail by the Secretary of the Joint Arbitration Board before which such dispute is pending. Such summons may compel the production of any document or the testimony of any witness which the Joint Arbitration Board deems relevant to the resolution of the case. Failure of the Employer or employees to respond when so summoned, except for valid reason, shall subject him or them to the payment of any cost incurred by the Joint Arbitration Board in connection with such failure to respond.

Decisions of the Joint Arbitration Board shall be by majority vote. A majority shall consist of fifty percent (50%) plus one (1) of those members of the Joint Arbitration Board present and voting.

**SECTION 3.7. Indemnification of the Joint Arbitration Board.** The parties hereto agree that the members of the Joint Arbitration Board representing either or both of them in proceedings before such Joint Arbitration Board under the provisions of this Agreement shall be indemnified as Joint Arbitration Board members against judgment, court costs and attorney's fees incurred and/or paid by the Joint Arbitration Board members in defending any suit or legal proceeding brought against the Joint Arbitration Board members in their respective capacity to enforce any liability or alleged liability on account of any loss, claim or damage which, if established against the Joint Arbitration Board members, shall constitute a valid and collectible loss sustained by either appropriate party under the terms of this Agreement.

In the event of any other suit or action against a member or members of the Joint Arbitration Board for or on account of an act performed pursuant to the authority provided for in this Agreement, the Joint Arbitration Board may draw upon any funds which are in its hands or under its control subject to such

13